UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MCCRAY,<br>Plaintiff,<br>-vs-<br>ARXADA, LLC,<br>Defendants. | Civil Action No. 4:25-CV-2051<br>**PLAINTIFF REQUESTS A TRIAL BY JURY**<br>**COMPLAINT** |

Plaintiff, James McCray ("PLAINTIFF" and/or "MR. MCCRAY") by and through undersigned counsel hereby files this Civil Action Complaint against, Defendant, Arxada, LLC ("DEFENDANT" and/or "ARXADA") and upon information and belief avers the following:

**NATURE OF THE CASE**

Plaintiff complains of race discrimination, hostile work environment, retaliation, and wrongful termination pursuant to the Civil Rights Act of 1866, as codified 42. U.S.C. § 1981 ("Section 1981"), and the Pennsylvania Human Relations Act ("PHRA"), as codified, 43 P.S. § 955 *et seq*., and seeks damages to redress injuries Plaintiff suffered as a result of discrimination and retaliation, which ultimately led to Plaintiff's termination by his employer due to his race. Plaintiff further seeks damages incurred as a result of Defendant's hostile work environment.

## JURISDICTION AND VENUE

1. This action involves a question of federal law pursuant to the Civil Rights Act of 1866, as codified, 42. U.S.C. § 1981 (hereinafter "§1981.")

2. This court has supplemental jurisdiction over the Commonwealth causes of action, as they arise from the same nucleus of operative fact.

3. Venue is proper in the Middle District of Pennsylvania as Plaintiff was employed by the Defendant and worked in the county of Lycoming in the Commonwealth of Pennsylvania where the discrimination occurred.

4. Plaintiff has exhausted his administrative remedies pertaining to this action by filing a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC").

5. Around June 18, 2024, Plaintiff received a Right to Sue Notice from the PHRC.

6. Plaintiff has filed this Complaint within two (2) years from the issuance of his Right to Sue Notice.

## PARTIES

7. Plaintiff, JAMES MCCRAY ("Plaintiff" or "MR. MCCRAY) is an adult individual who resides in the City of Williamsport within the Commonwealth of Pennsylvania.

8. Defendant, ARXADA, LLC ("DEFENDANT" or "ARXADA") is a foreign business organization which regularly transacts business in the Commonwealth of Pennsylvania, with offices for the purposes of service at Arxada AG, Peter Merian-Strasse 80 4052, Basel Stradt, Switzerland.

9. Defendant ARXADA operates a chemical manufacturing plant located at 3500 Trenton Avenue, Williamsport, Pennsylvania 17701, where Plaintiff worked.

10. At all times material to this Civil Action, Plaintiff MCCRAY was qualified for the position of his employment.

11. At all times relevant to this Civil Action, Plaintiff was employed by Defendant, and both Plaintiff and Defendant agreed that Plaintiff was a W2 employee.

12. At all times relevant to this Civil Action, Defendants employed more than twenty people and were subject to the federal antidiscrimination statutes including §1981.

## MATERIAL FACTS

13. Around April 15, 2019, Plaintiff began his employment for Defendant Arxada as a full-time Production Worker.

14. Plaintiff is a black/African American male individual.

15. At all times, Plaintiff excelled in his position and fulfilled the terms and conditions of his employment.

16. Almost immediately upon beginning his employment, Plaintiff noticed that black/African American individuals were treated disproportionately poorly in comparison to similarly situated employees who were not members of Plaintiff's protected class.

17. During his employment, Defendant's white/Caucasian employees regularly and openly referred to Plaintiff as "**Boy**" and/or "**Nigger**."

18. Plaintiff, on multiple occasions, opposed the racial slurs and demanded that white/Caucasian employees not use derogatory racial slurs while in his presence.

19. Moreover, Plaintiff specifically requested to be acknowledged by his real name, but Defendant's employees disregarded his requests and continued their racial harassment.

20. In one especially notable act of egregious harassment, Jamie Rakestraw (hereinafter referred to as "Rakestraw"), a white/Caucasian employee of Defendants who regularly made comments to Plaintiff regarding Plaintiff's race told Plaintiff that "Jeffrey Dahmer would have loved you."

21. Jeffrey Dahmer is an infamous serial killer known for committing heinous and gruesome acts of violence, and whose victims were primarily Black/African American.

22. Plaintiff reported the egregious racial harassment to several employees of Defendants, including Union President Brian Warnecke ("Warnecke") on numerous occasions; however, the harassment continued unabated.

23. In a remarkably callous act, Warnecke even seemed to agree that the mistreatment was due to Plaintiff's race, yet failed to take any action to address the harassment.

24. Plaintiff was also subjected to disproportionate work rules due to Plaintiff's race. Plaintiff was constantly forced to work overtime, while Defendant's White/Caucasian employees were not forced to work overtime.

25. Further, Plaintiff regularly observed white/Caucasian coworkers violating workplace rules (even in the presence of supervisors) who were permitted to do so without consequence, while Plaintiff was often singled out for disciplinary actions.

26. Plaintiff was also regularly targeted with false allegations of misconduct due to his race, which he duly reported to supervisors including Larry Gray.

27. Furthermore, in a meeting around June 2022, Plaintiff reported to his supervisor, Jack Dincher, about how he was being singled out and mistreated by both Defendant's management and his union, but once again, no action was taken.

28. Plaintiff was reprimanded much more so than similarly situated coworkers.

29. Around January 3, 2023, Plaintiff spoke to Terry O'Connor (hereinafter referred to as "O'Conner"), who was employed by Defendants as a Human

Resources Representative, and engaged in protected activity when he complained of race discrimination and harassment in the workplace.

30. Plaintiff explicitly told O'Conner that "I am experiencing issues in the workplace due to my race," as well as providing O'Connor with photographic evidence of certain ongoing issues.

31. However, O'Conner dismissed Plaintiff's report and simply responded by stating that "there are always issues in that department…it's a 'snake pit.'"

32. At all times, O'Conner made no effort to investigate or remedy the racial discrimination that Plaintiff was experiencing.

33. Around January 9, 2023, mere days following his formal report to O'Connor, Plaintiff was unlawfully terminated from his employment.

34. Plaintiff was not permitted to return to work, nor was he offered a "Last Chance Agreement" to retain his employment as many others outside his protected class were.

35. Further, Defendant's stated reason for Plaintiff's termination is wholly pretextual, as the alleged reasons supplied for his termination contained numerous falsehoods pertaining to his work history and the events leading to his termination.

36. Throughout his employment, Plaintiff acted in accordance with company policy to the best of his abilities, and many of the allegations of performance issues

were in fact due to the discrimination from Defendants stemming from Plaintiff's membership in a protected class.

37. Plaintiff was targeted for adverse action including termination due to Plaintiff's membership in a protected class (Black/African American) and due to Plaintiff's reports of and opposition to the discrimination and harassment in the workplace.

38. As a result of Defendant's conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

39. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

40. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

41. Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

42. Plaintiff has further experienced severe emotional and physical distress.

43. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant, jointly and severally.

44. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

45. Defendant at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

46. Defendant's discriminatory conduct was severe and pervasive, and created a hostile work environment for Plaintiff.

47. The above are just some of the examples of the discrimination and retaliation to which Defendant subjected Plaintiff.

48. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

**AS A FIRST CAUSE OF ACTION**
**FOR RACE DISCRIMINATION UNDER**
**42. U.S.C. § 1981**

49. Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

50. 42 U.S.C. § 1981 states in relevant part as follows:

a. (a) Statement of equal rights of all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security

of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

51.Defendant discriminated against Plaintiff on the basis of his race by subjecting him to unlawful employment actions, including but not limited to termination, on the basis of his race.

52.Plaintiff makes claims for all damages available to him as a result of Defendant's unlawful discrimination.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**42 U.S.C. § 1981**

53.Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

54.Defendant violated 42 U.S.C. § 1981 by subjecting Plaintiff to retaliation for his protected complaints and opposition to Defendant's unlawful discriminatory

conduct on the basis of his race, including but not limited to denying Plaintiff like privileges of employment by terminating Plaintiff's employment.

55. Plaintiff makes claims for all damages available to him as a result of the Defendant's retaliation.

## AS A THIRD CAUSE OF ACTION FOR HOSTILE WORK ENVIRONMENT UNDER 42 U.S.C. § 1981

56. Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

57. While employed by Defendant, Plaintiff was subjected to an intimidating, hostile and offensive work environment because Plaintiff was subjected to verbal, disparaging comments from Defendant. The conduct was sufficiently severe and pervasive such that it altered the terms and conditions of Plaintiff's employment such that no other reasonable person in Plaintiff's position would have been able to continue working under the same conditions.

58. Plaintiff was terminated in or around September 2023 as a result of this hostile work environment.

59. Plaintiff makes claims for all damages available to him as a result of the hostile work environment that he was forced to endure during his employment with Defendant.

## AS A FOURTH CAUSE OF ACTION

**FOR RACE DISCRIMINATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT § 955**

60. Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

61. The PHRA § 955 (a) states that "It shall be an unlawful discriminatory practice…(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

62. Defendant ARXADA took actions against Plaintiff in violation of the PHRA by discriminating against Plaintiff and ultimately terminating him on the basis of his race and in retaliation for his reports of the same.

63. Plaintiff makes claims for all damages available to him as a result of Defendant's unlawful discrimination.

**AS A FIFTH CAUSE OF ACTION**

## FOR RETALIATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT § 955

64. Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

65. The PHRA § 955(c) states that "It shall be an unlawful discriminatory practice…(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

66. Defendant ARXADA retaliated against Plaintiff in violation of the PHRA by terminating him in response to his formal complaint of discrimination.

67. Plaintiff makes claims for all damages available to him as a result of Defendant's unlawful retaliatory actions.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, including but not limited

to, all emotional distress, back pay, front pay, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.

Dated: October 30, 2025

**FREUNDLICH & LITTMAN, LLC**
Attorneys for Plaintiff

By: *<u>/s/ Nathaniel N. Peckham, Esq.</u>*
Nathaniel N. Peckham, Esq.
PA ID No. 325064
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
F: (215) 545-8510
E: *nathaniel@fandllaw.com*